**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOSEPH TARZIA : | |
|     PLAINTIFF, : | |
| : | |
| v. : | Case No. 3:10cv1583 (VLB) |
| : | |
| CITY OF STAMFORD, : | |
| STAMFORD BOARD OF ETHICS, : | |
| ERNEST ORGERA. TANIA BARNES, : | NOVEMBER 9, 2010 |
| MICHAEL DOCIMO, MICHAEL SCACCO : | |
| : | |
|     DEFENDANTS : | |

<u>MEMORANDUM OF DECISION DENYING THE [DOC. #16] PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER</u>

Before the Court is the application of the plaintiff, Joseph Tarzia

(hereinafter "Tarzia") seeking a temporary restraining order pursuant to Fed. R.

Civ. P. 65(b). Specifically, the plaintiff moves this court for an order preventing

the City of Stamford (the "City") and its Board of Ethics (the "Board") from taking

evidence at a public hearing of the Board scheduled for October 19, 2010,

asserting that it had previously stated that it would only "commence" its hearing

by addressing pending motions. Mr. Tarzia does not object to the commencement

of the public hearing, and only requests that  this Court to issue a temporary

restraining order maintaining the status quo until the Court has an opportunity to

address the merits of the Plaintiff's motion for a preliminary and permanent

injunctive relief.  This court heard arguments from the parties regarding the

plaintiff's requested relief on October 19, 2010 and based on the plaintiff's

briefing, and arguments and representations made by both parties, the court

1

rules that the plaintiff's request for a temporary restraining order is denied.

Tarzia seeks a temporary restraining order on four grounds. Tarzia contends that 1) on October 5, 2010, during a public hearing the Board of Ethics told his attorney that the hearing on October 19, 2010, would commence so as to meet a deadline, but that no witnesses would be called, and that Tarzia's attorney relied on that statement to his detriment; 2) the Office of Legal Affairs failed to provide Tarzia's attorney with access to critical public records needed for the hearing, which were sought by a Freedom of Information Act (FOIA) request on September 24, 2010; 3) the public Board hearing will consider conduct by Tarzia that the City's Office of Legal Affairs has already determined to be protected by the doctrine of absolute legislative immunity; and 4) the City's Code of Ethics is unconstitutionally overbroad and vague, both on its face and as applied to the facts of this case. Tarzia therefore claims he will suffer immediate and irreparable injury and harm because his attorney will not have the public records needed to prepare his defense, he will be exposed to prosecution for conduct that the City has determined he has legislative immunity, and that the Code of Ethics is unconstitutional.

The defendant in turn denies the plaintiff's claims and argues that the court is barred by the <u>Younger</u> Abstention doctrine from enjoining the hearing and that the plaintiff will not be irreparably harmed as the hearing will be conducted on diverse days over a number of months during which he can obtain the sought records, the Board has agreed to allow the plaintiff to recall witnesses, and he

can appeal the decision of the board under Connecticut's Administrative

Procedures Act. Conn. Gen. Stat § 4-166.

Discussion

Authorized by Federal Rule of Civil Procedure 65(b), a plaintiff is entitled to a preliminary injunction when that party can demonstrate: "(1) irreparable harm in the absence of the injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Random House, Inc. v. Rosetta Books LLC, 283 F.3d 490, (2d Cir. 2002).

On the basis of arguments and representations made at the hearing on the plaintiff's motion conducted by this court on October 19 2010, the court finds that the plaintiff's counsel was not misled by the defendants, as he claims, regarding the format of the Board's October 19, 2010 hearing, but was instead understandably mistaken.  His confusion stems from an October 5, 2010 meeting of the Board at which two hearings to address ethics complaints were discussed. One hearing, scheduled for October 19, 2010 to hear a complaint filed by a Tania Barnes (the "Barnes hearing") and a second hearing scheduled for October 25, 2010 to address a complaint that was initially filed by a Michael Scacco (the "Scacco hearing").  Plaintiff's attorney was not present for the entire October 5, 2010 meeting, and based on representations made by both parties, the court finds that plaintiff misinterpreted the discussion relating to the non-evidentiary nature

of the Scacco hearing as relating to the Barnes hearing. The court also finds that while the Plaintiff sought confirmation regarding the October 19, 2010 proceeding from an attorney Laske, who serves as an attorney for the Board, attorney Laske did not act to mislead the plaintiff's counsel. Both attorney Laske and Mr. Tarzia's attorney traveled similar routes on the date of the October 5, 2010 meeting, and counsel for Tarzia notes that he was delayed due to severe traffic congestion. The plaintiff cannot claim with certainty that attorney Laske was present for the entire meeting and that any misrepresentation was due to the fact that he did not honestly believe that the October 19, 2010 Barnes hearing would be solely procedural and non-evidentiary. The court therefore finds, that to the extent the plaintiff claims he was mislead regarding the nature of the October 19, 2010 Barnes hearing, Tarzia fails to demonstrate either a likelihood of success on the merits or to raise sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor on the basis of misrepresentation.

Furthermore, the Court finds an absence of irreparable harm, further underscoring that the balance of hardships do not tip decidedly in the movant's favor, due to Tarzia's failure to demonstrate how the misunderstanding regarding the nature of the October 19, 2010 proceeding results in an irreparable harm In the absence of an injunction as the ethical proceeding will occur over a number of days, and into the month of November, and possibly December, allowing Tarzia the opportunity to obtain further information, re-call witnesses and cross-

examine witnesses regarding any testimony that is presented during the first day of the hearing.

The Court similarly finds that Tarzia has failed to identify irreparable harm due to the Office of Legal Affairs' failure to meet Tarzia's September 24, 2010 FOIA request prior to the October 19, 2010 hearing. While Tarzia broadly contends that his attorney will not have the public records needed to prepare his defense, the plaintiff acknowledged, during the court's hearing, that the documents have not been refused and are anticipated as forthcoming. Further, there was no demonstration of how the unavailability of requested items would impact Tarzia's representation, particularly given the fact that Tarzia will have a subsequent opportunity to conduct cross-examination of evidence presented. The hearing will not conclude on the first day and therefore there is no evidence on the record that the plaintiff's counsel will not have the information to which he is entitled prior to the conclusion of the hearing.

Tarzia claims that he will be exposed to prosecution for conduct that the City has already determined is protected by the doctrine of legislative immunity, noting "[i]f Mr. Tarzia had not asked for the information, he would never be subjected to these complaints. Therefore there can be no doubt that the ethics complaints are seeking to punish Mr. Tarzia as a result of his efforts to fulfill his legislative duties as he deems fit." [Doc. #9]. The Plaintiff contends that this will result in irreparable harm because "allowing the Board of Ethics to prosecute Mr. Tarzia in a public hearing under the poorly drafted Code needlessly exposes him

to the risk of a negative result, and a later adjudication of the case by this court in his favor will not undue the harm inflicted upon him and his public reputation by such a charge." [Doc. 9].

While the Plaintiff represents that the City published a Position Statement regarding a discrimination complaint filed with the State of Connecticut Commission on Human Rights and Opportunities (CHRO) that contended that Barnes claims with respect to Tarzia's conduct were barred by the doctrine of absolute legislative immunity, it does not necessarily follow that the City would take the position that Barnes' allegations that Tarzia attempted to reduce the disciplinary penalty of a city employee in violation of the City's Code of Ethics, qualifies as conduct protected by the doctrine of absolute legislative immunity. Further, Tarzia fails to demonstrate beyond relying on the noted position statement, that Tarzia is in fact likely entitled to absolute legislative immunity for the conduct that is asserted to be in violation of the Code of Ethics, beyond conclusory assertions that he was acting within his core legislative duties.

Lastly, the Plaintiff acknowledged a lack of authority in this Circuit extending the doctrine of absolute legislative immunity to a public official accused of a public ethics violation. "[L]egislative immunity shields an official from liability if the act in question was undertaken in the sphere of legitimate legislative activity." Almonte v. City of Long Beach, 478 F. 3d. 100, 106 (2d Cir. 2007) (internal citations and quotation marks omitted). In determining whether a legislator acted within a "sphere of legislative activity" the court must consider

whether the officials' actions were legislative "in form," that is, whether they were "integral steps in the legislative process" and whether the official's actions were "legislative in substance" that is, "whether the actions bore all of the hallmarks of traditional legislation, including whether they reflected discretionary, policy-making decisions, implicating the budgetary priorities of the government and the services the government provides to its constituents."  State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 89 (2d Cir. 2007) (internal citations and quotation marks omitted ).  A court cannot consider the official's motives in determining whether an official's conduct was legislative in form and substance, thus qualifying it for legislative immunity.  Id. at 90.  The firing of a particular employee, unlike the elimination of a position, is not a substantively legislative act for legislative immunity purposes.  Id. at 91.  "A personnel decision is administrative in nature if it is directed at a particular employee or employees and is not part of a broader legislative policy."  Id. (internal citation and quotation marks omitted).  In contrast, where public officials had explicit authority to appoint members of an agency's board and review and comment on its budget, they were found to have acted within the sphere of their legislative duties when they investigated and criticized the conduct of the agency.  Savoy of Newburgh v. City of Newburgh, 242 Fed. Appx. 716 (2d Cir. 2007).  Tarzia's activity appears to relate to personnel decisions as they related to particular employees as opposed to a decision involving broader legislative policy, or the Board of Finance's authority relating to investigation of the City's fiscal policy.

Accordingly, Tarzia fails to demonstrate either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

Further, Tarzia fails to demonstrate irreparable harm as anticipated reputational damage fails to qualify as irreparable harm. The Supreme Court instructs:

> The key word in this consideration is irreparable. Mere injuries, however substantial in terms of money, time and energy necessarily expended in absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Sampson v. Murray, 415 US 61, 90 (1974) (internal quotations and citations omitted). The Court instructed that a show of loss of income and impending reputational damage "falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction." Id at 91.

As a persuasive authority, The Eastern District of New York offers useful analysis for determining whether injury to professional reputation can result in irreparable harm:

> With respect to the plaintiff's employment opportunities and professional reputation . . . irreparable injury along these lines can only be established by a clear demonstration that the plaintiff: (1) has little chance of securing future employment; (2) has no personal or family resources; (3) has no private unemployment insurance; (4) is unable to finance a loan privately; (5) is ineligible for public assistance; and (6) there are other "compelling circumstances" weighing heavily in favor of interim relief.

Ahmad v. Long Island University, 18 F.Supp.2d 245, 248 (E.D.N.Y., 1998) (citing

**Williams v. State Univ. of N.Y.**, 635 F.Supp.1243, 1248 (E.D.N.Y., 1986). That District Court found that "In essence, the plaintiff must quite literally find [himself] being forced into the streets or facing the spectre of bankruptcy before a court can enter a finding of irreparable harm." **Id.** at 248-249. That reading is consistent with the view that a general concern over potential damage to one's professional reputation does not arise to the level of irreparable harm. Instead, reputational harm reaches the level of irreparable harm in circumstances that "depart from the normal situation." **Sampson** at 92 n.68. Moreover, the proceedings before this court reflected that the information that will be revealed during the October 19, 2010 hearing has already been published and circulated by the media which has covered the ethics investigation to date.

Lastly, Tarzia claims that the City's Code of Ethics is unconstitutionally overbroad and vague, both on its face and as applied to the facts of this case, and that "subjecting Mr. Tarzia to a public hearing before a Board of Political appointees on a constitutionally infirm code will expose him to immediate and irreparable harm and injury." [Doc. #16]. The City notes, in turn, that this court should deny the Plaintiff's motion pursuant to the **Younger** abstention doctrine. See **Younger v. Harris et. al.**, 401 U.S. 37 (1971). **Younger** and its accompanying case law require that federal courts abstain from enjoining a pending state judicial proceeding, in order to "allow state courts to resolve pending matters within their jurisdiction." **Washington v. County of Rockland**, 373 F.3d 310, 318 (2d Cir. 2004). The **Younger** doctrine "is fueled by the notion that courts of equity

**9**

should not intervene where a party has an adequate remedy at law, and by concerns of comity and federalism expressed in the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." <u>Cecos Int'l Inc. v. Jorling</u>, 895 F. 2d 66, 70 (2d Cir. 1990) (internal quotations and citations omitted).

While <u>Younger</u> involved a constitutional challenge to a pending state criminal proceeding, <u>Younger</u> abstention "has been extended beyond the ambit of state criminal prosecutions to state civil proceedings and administrative proceedings." <u>Washington</u>, 373 F. 3d at 318. While subject to limited exceptions, <u>Younger</u> abstention is mandatory when: (1) "there is an ongoing state proceeding"; (2) "an important state interest is involved"; and (3) "the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding." <u>Christ the King Regional High School v. Culvert</u>, 815 F. 2d 219, 224 (2d Cir. 1987). Even in circumstances where the requirements of the <u>Younger</u> doctrine are met, a federal court may intervene in a state proceeding upon a showing of "bad faith, harassment or any other unusual circumstance that would call for equitable relief." <u>Younger</u>, 401 U.S. at 54. The Second Circuit groups these exceptions to <u>Younger</u> abstention into two main categories: "bad faith/harassment' and "extraordinary circumstances". <u>See Diamond "D" Constr.</u>, 282 F. 3d at 198-201. A plaintiff bears the burden of showing that one of these noted exceptions applies. <u>Kirschner v. Klemons</u>, 225 F. 3d 227, 235-236 (2d Cir. 2000).

The bad faith exception applies to "proceedings[s] . . .initiated with and ... animated by a retaliatory, harassing, or other illegitimate motive." **Diamond "D" Constr.**, 282 F.3d at 199.  Furthermore, "the party bringing the state action [generally] must have no reasonable expectation of obtaining a favorable outcome."  **Cullen v. Flienger**, 18 F. 3d 96, 103 (2d Cir. 1994).  However, "[a] state proceeding that is legitimate in its purposes, but unconstitutional in its execution-even where the violations of constitutional rights are egregious-will not warrant the application of the bad faith exception." **Diamond "D" Constr.**, 282 F.3d at 199.

In turn, the "extraordinary circumstances" exception requires "(1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." **Diamond "D" Constr.**, 282 F.3d at 201.

While the Court finds that the **Younger** doctrine may potentially be properly invoked due to the pendency of an ongoing Board of Ethics proceeding and the important state interest of preventing public officials from using their power of public office for private and personal gain, which the Plaintiff acknowledges as a "compelling state interest" [Doc. #5], it is unclear that Tarzia has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding, absent the instant case, as Mr. Tarzia contends that "Connecticut law does not recognize an appeal from a finding or ruling by a municipal board of

ethics to the Superior Court." [Doc. # 5].  Indeed at least one Connecticut court has noted that there is no statutory authorization for an appeal from an ethics commission, even where a town charter identifies a right to judicial review as municipalities' authority to "adopt and amend a charter" and to "amend a home rule ordinance" "do not confer on municipalities the authority to expand the scope of the Superior Court's Jurisdiction."  Bateson v. Ethics Commission, Town of Fairfield, No. CV094027183 2009 WL 3286135 Judicial District of Fairfield at Brigeport, Arnold , J. (September 14, 2009).

While the Defendant contends that the Plaintiff can appeal the decision of the board under the Connecticut Uniform Administrative Procedures Act, Connecticut  General Statute § 4-168, a town board is not an "agency" within the meaning of that act as it only applies to state agencies, boards, and commissions.  See Conn. Gen. Stat. § 4-166(1) (defines "agency" as "each state board, commission, department or officer . . ."); see also Maresca v. Town of Ridgefiled, 647 A. 2d 751, 753 n. 2 (Conn. App. 1994) (noting that the definition of agency does not include "either house or any committee of the general assembly, the courts, the council on probate judicial conduct, the governor, lieutenant governor or attorney general, or town or regional boards of education" and that the board of selectmen of the town of Ridgefield did not meet the statutory definition of an agency).

Accordingly, it is not established, at this stage of the proceedings, that abstention pursuant to the <u>Younger</u> doctrine precludes the Court's consideration of the Plaintiff's motion for injunctive relief. The court nevertheless denies the plaintiff's motion for injunctive relief due to the plaintiff's failure to demonstrate irreparable harm and also his failure to establish either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

The subject of the October 19, 2010 hearing are alleged violations of §§ 19-2.B., 19-5.B and 19-8A. § 19-2.B requires that:

> Officers and employees of the City of Stamford must refrain from personal, business, financial and political activities that can reasonably be interpreted to reflect adversely on the individual's fidelity and impartiality, having regard for the nature and scope of their official responsibilities.

§ 19-2.B. In turn, § 19.5.B states: "[a]n officer or employee shall not grant special consideration, treatment or advantage to any person beyond that which is generally available to other citizens of the city." Lastly, § 19-8A states:

> An officer or employee shall not attempt to influence any other officer or employee about any matter before any city agency in which said officer or employee or any member of his or her family has an interest, or from which said officer or employee would be likely to gain or lose material benefit that is not common to the general interest of other citizens of the city. This subsection does not prohibit an officer or employee from communicating about a matter in which he or she has a property, contract or other legally protected interest as a citizen of the city, if the communication is:

13

> **(1) With an officer or employee responsible for the matter on behalf of the city; and**

> **(2) Reasonable and necessary in transacting the matter and is conducted by means and in terms that other persons generally might lawfully use in the circumstances.**

§ 19-8A

The plaintiff contends that these sections of the Code of Ethics are overly broad due to the Code's failure to define what is meant by "personal . . . and political activities," "attempt to influence," "interest," or "grant" and its failure to provide limitation on the scope of its sections therefore resulting in "an almost unlimited reach." [Doc. #5]. Tarzia contends that the Code regulates "protected speech" under the First Amendment and that any loss of First Amendment freedoms due to enforcement of the Code of Ethics statute through the October 19, 2010 hearing constitutes irreparable injury.

The Supreme Court has instructed that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976); accord Berry v. City of N.Y., 97 F.3d 689, 693-694 (2d Cir. 1996). In turn, the Second Circuit has "not consistently presumed irreparable harm in cases involving allegations of the abridgment of First Amendment Rights." Bronx Household of Faith v. Bd. of Educ. Of City of N.Y., 331 F . 3d 342, 349 (2d Cir. 2003). The Second Circuit has clarified, however, that (1) "[w]here a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be

**14**

presumed," but (2) "where a plaintiff alleges injury from a rule or regulation that may only potentially affect speech, the plaintiff must establish a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of free speech rights." Bronx Household of Faith, 331 F. 3d at 349-50.

In this case, the Board of Ethics is proceeding with a hearing based on a finding of probable cause, by existing board members, that Tarzia asked two individuals, Ernie Orgera and Mickey Docimo, to intercede to reduce a disciplinary penalty on a city employee named Tony Vaccaro while having a personal interest, and that his request was an attempt to influence that also reflected adversely on his impartiality.   The court notes that the speech the plaintiff identifies as affected by the Code of Ethics is speech that has already occurred, and that in this request for temporary restraints, the plaintiff only seeks to enjoin the October 19, 2010 hearing and not to enjoin enforcement of the Code of Ethics due to future feared deprivation of free speech.  Accordingly, plaintiff fails to establish irreparable harm that will occur absent an injunction of the October 19, 2010 hearing.

Further, it is not apparent to this court, that the hearing relates to protected speech as it relates to Tarzia's commenting on the termination of a public employee.  The First Amendment states in relevant part that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. Amend. I.  A statute regulating speech "of private citizens on private property or in a traditional public

forum is presumptively impermissible, and this presumption is a very strong one." City of Lodue v. Gilleo, 512 U.S. 43, 59 (1994) (O'Connor, J., concurring). The level of scrutiny applied to a statute depends on whether that statute's regulation of speech is content based. If a court determines that a law restricts speech on the basis of its content, that is, where the content of speech determines whether a law applies, Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 516 (1981), the regulation is presumed to be invalid, R.A.V. v. City of Paul Minn., 505 U.S. 377 (1992) and is subject to strict scrutiny. Accordingly, such a regulation will only be upheld if the municipality demonstrates that the regulation ". . . is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Boos v. Barry, 485 U.S. 312, 321 (1988).

In contrast, content neutral laws impact First Amendment rights incidentally, Turner Broadcasting System Inc. v. FCC, 512 U.S. 622 (1994), and are therefore subject to intermediate scrutiny which requires such a regulation to "further an important or substantial governmental interest unrelated to the suppression of free speech, provided the incidental restrictions [do] not burden substantially more speech than is necessary to further those interests." Turner Broadcasting System, Inc. v. FCC, 520 U.S. 180, 186 (1997).

In determining the appropriate level of scrutiny the key question "is whether the government has adopted a regulation of speech because of disagreement with the message it conveys" as "[t]he government's purpose is the controlling consideration . . .Government regulation of expressive activity is

content neutral so long as it is justified without reference to the content of the regulated speech.'"Board of Managers of Soho Intern Arts Condominium v. City of New York, No. 01 Civ. 1226, 2004 WL 1982520 at *10 (S.D.N.Y. Sept. 8, 2004) (internal citation omitted).

Therefore, First Amendment protections are not absolute. See Reagan v. Boogertman, 984 F. 2d 577, 579 (2d Cir. 1993) (internal citation omitted). "[E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (internal citations and quotation marks omitted).

In the context of a public employee, the Second Circuit has noted that:

> Under the First Amendment, a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression. Rather the First Amendment protects a public employee's right, in certain circumstances to speak as a citizen addressing matters of public concern. A public employee, however, must by necessity accept certain limitations on his or her freedom because his or her speech can contravene governmental policies or impair the proper performance of governmental functions.

Weintraub v. Board of Education of the City School District of the City of New York, 593 F. 3d 196, 200-201 (internal citations and quotation marks omitted). In

<u>Garcetti v. Ceballos</u>, the Supreme Court clarified the First Amendment rights that apply to public employees.  547 U.S. 410 (2006).  In <u>Garcetti</u>, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." <u>Id</u>. At 421.  A court must therefore first determine whether a public employee is speaking pursuant to his official duties and therefore not as a citizen, and secondly  if it is found that the employee is not speaking pursuant to official duties, whether that employee's speech addresses a matter of public concern.  <u>Weintraub</u>, 593 F. 3d at 201.  As explained by the Supreme Court. "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."  <u>Garcetti</u>, 547 U.S. at 411.

In <u>Garcetti</u>, the Supreme Court defined speech made "pursuant to" a public employee's job duties as "speech that owes its existence to a public employee's professional responsibilities." 547 U.S. at 421.  "The objective inquiry into whether a public employee spoke 'pursuant to' his or her official duties is 'a practical one.'" <u>Weintraub</u>, 593 F. 3d at 202.  In <u>Garcetti</u> the Supreme Court cautioned against construing a government employee's official duties too narrowly:

> Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary

18

> nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

Garcetti, 547 U.S. at 424-425.

The Second Circuit has not explicated whether Tarzia's speech, as that of an elected official, should be subjected to the analysis identified in Garcetti for speech made by a public employee.  As persuasive authority, the Fifth Circuit has pronounced that the "First Amendment's protection of elected officials' speech is full, robust, and analogous to that afforded citizens in general" and that "when a state seeks to restrict the speech of an elected official on the basis of content, a federal court must apply strict scrutiny and declare the limitation invalid unless the state carries its burden to prove both that the regulation furthers a compelling state interest and that it is narrowly tailored to serve that interest."  Rangra v. Brown, 566 F. 3d 515, 517-18 (5th Cir. 2009) (dismissed for mootness due to plaintiff's leaving office on May 19, 2009 upon Rehearing en banc in Rangra v. Brown, 584 F. 3d 206 (5th Cir. 2009).   The Circuit Court observed that the "district court assumed that there is no meaningful distinction between the speech of elected officials and that of public employees and held that, under Garcetti, the plaintiffs' speech pursuant to their official duties was not protected by the First Amendment" and that "the district court's premise that the First Amendment's protection of elected officials' speech is limited just as it is for the speech of public employees, however, [was] incorrect." Rangra 556 F.3d at 522.

However, regardless of whether Tarzia's claim is analyzed pursuant to the test set forth in Garcetti for public employees, or Tarzia's speech is analyzed pursuant to the analysis afforded to a private citizen, the Defendant fails to establish a likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. If viewed as a public employee, Tarzia's speech would not receive first amendment protection because to the extent Tarzia was not making statements pursuant to his official duties[1], Tarzia's statements regarding the termination of a public employee did not constitute a matter of public concern as there is no indication that the statements related to a larger trend or issue of public or societal importance. See Mishk v. Destefano, 5 F. Supp. 2d 194, 201-202 (S.D.N.Y., 1998) (noting that "[i]n this case, however [the plaintiff] was not attempting to bring to the public's attention the pervasive use of drugs by government employees or to alter the City's drug screening policy or employment criteria. Rather, [the plaintiff] simply expressed his view, as he was requested to do, that the City should not hire an applicant due in part to what he believed to be an on-going substance abuse problem.") Further even if Tarzia was speaking on a matter of public concern, or is entitled to the protections of the First Amendment as an elected official in contrast to a public

---

[1] The Court notes that if analyzed pursuant to Garcetti, it is extremely plausible that the Plaintiff's statements were made pursuant to his official duties, as the Plaintiff's arguments for absolute legislative immunity is rooted in the premise that the pending ethical complaints relate to "actions within his core legislative duties." [Doc. #5].

employee, Tarzia is unlikely to succeed as any regulation of his speech is necessary to serve a compelling state interest and is narrowly drawn to achieve that end. In particular, Tarzia acknowledges that the deterrence of corruption of public officials is a compelling state interest. Further, the Court finds that for the purposes of this motion, that the Plaintiff is unlikely to demonstrate that the Town's Code of Ethics is not sufficiently narrowly tailored to survive strict scrutiny.

Based on its review of the materials submitted, and on the foregoing analysis, the Court denies the [Doc. #16] Plaintiff's Motion for Temporary Restraining Order.

IT IS SO ORDERED.

_____/s/_____

Hon. Vanessa L. Bryant

United States District Judge

Dated at Hartford, Connecticut: November 9, 2010.